J. M. Kaaihue et als. *v.* Elizabeth M. Crabbe and her husband.

## SUPREME COURT—IN BANCO.

## JANUARY TERM—1877.

*Allen, Ch. J., and Judd, J.; Harris, J., dissenting.*

J. M. KAAIHUE, (K.) HAALIPO AND KAILIANU (W.) *vs.* ELIZA-
BETH M. CRABBE AND H. G. CRABBE, HER HUSBAND.

A DEED written in English, being signed by a Hawaiian; HELD, that
a grantor is presumed to have known the contents of the deed he
has executed, unless the contrary is affirmatively shown, and the
burden of proof is on the party alleging ignorance.

The grantees' possession of a deed presumes delivery of it, and
acceptance.

The statute of 1846 concerning the registry of deeds, did not render a
non-recorded deed a nullity, by its provision that such deed should
not receive judicial cognizance, and said statute being now repealed
does not affect deeds made during its existence.

Whether the possession in fact is adverse or is under the owners'
title, is one for the jury, with this limitation that the burden of
showing the possession to have been adverse is upon the party
alleging it, but what constitutes an adverse possession, and what
evidence of its being such is sufficient are questions of law for the
Court.

The judgment of a Police Court, in an action under the Landlord and
Tenant Statute, is not decisive of tenancy and title, where it is dis-
puted that the relation of landlord and tenant exists.

Opinion of a majority of the Court, delivered by JUDD, J.

This is an action of ejectment for a lot of land on the
Nuuanu valley road, Honolulu, which the plaintiffs claim as
being the legal representatives of Kalamau, deceased, to
whom the land was awarded by Land Commission Award,
No. 4700, B. The award is dated April 1st, 1850, and the
survey accompanying it March 5th, 1850, to E. Keo for
Kalamau.

J. M. Kaaihue et als. *v.* Elizabeth M. Crabbe and her husband.

The plaintiff Kaaihue claims that he is the purchaser of the interest of one Oopa, the brother of Kalamau, and he shows a deed dated March 3d, 1875, from Kaono, the widow and devisee of Oopa (now deceased,) by will admitted to probate April 30th, 1875, and he avers that he is entitled to the possession of this land upon the further claim that Oopa had a title to it by prescription for 20 years previous to the 14th March, 1873.

The defendant Mrs. Crabbe, claims as devisee of Capt. John Meek deceased, under will duly admitted to probate, and that the said land was conveyed by the woman Kalamau to Capt. Meek by deed dated the 26th February, 1850, and further that Oopa's occupancy of the land was as a tenant of Meek's and was not adverse.

A suit was brought by Capt. Meek in December, 1872, against the said Oopa in the Police Court of Honolulu, under Article LI. of the Civil Code, claiming the possession of the land from Oopa as his tenant by parole, after a ten days notice to quit. The Police Justice found that there was tenancy and issued a writ of possession which was finally executed by ousting Oopa on the 14th March, 1873.

An effort was made to perfect the appeal which the magistrate refused to allow, and proceedings were had by mandamus to compel the appeal, but it was finally refused by the Supreme Court in Banco, it being found by the Court that the appeal was not perfected in time.

The plaintiffs then commenced an action of ejectment against Capt. Meek which was partially heard at the April term, 1873. This action was discontinued upon a compromise being agreed upon between the parties, which however was never completely executed. Meanwhile Meek and Oopa deceased, and the present action was brought at the October term, 1875. It came on to be heard at the January term, 1876, before a mixed jury. The first jury disagreed and were discharged. The second trial resulted in a unanimous verdict for the plaintiffs.            97

We deem this history of the case to be necessary to its complete understanding.

A motion for a new trial is made on the ground that the verdict of the jury was contrary to the law and the evidence and the instructions of the Court, and because the Court erred in refusing the instructions asked for by the defendants, and in giving those asked for by the plaintiffs, and also because they have discovered new evidence. This last ground the Court find no difficulty in disposing of, as it appears quite clearly that these witnesses whose testimony is alleged to be newly discovered were accessible to the defendants at the trial and should have been produced then.

Let us now consider whether the verdict is contrary to the evidence.

The record shows that a deed was produced shown to have come from the possession of Meek, stamped with the old stamp in use many years ago.

As this is the most important feature in this case, we recite the deed in full. It is as follows:

### "QUIT CLAIM."

" Know all men by these presents, that I Kalamau, of Honolulu, Oahu, Hawaiian Islands, and wife of Keo, late deceased, for and in consideration of the sum of one hundred and fifty dollars, to me in hand paid by John Meek, of Honolulu, Oahu, Hawaiian Islands, the receipt whereof I hereby acknowledge, have bargained, sold and quit claimed, and by these presents do bargain, sell and quit claim unto the said John Meek, and to his heirs and assigns for ever, all my right, title, interest, estate, claim and demand, both at law and in equity, and as well in possession as in expectancy of, in and to all that certain piece or parcel of land situated contiguous to the Nuuanu valley road, and immediately adjoining the first stone bridge, out of the village of Honolulu, over which bridge said road passes, which property is

J. M. Kaaihue et als. *v.* Elizabeth M. Crabbe and her husband.

known as the property and residence of my aforesaid husband Keo, late deceased, with all and singular the hereditaments and appurtenances thereunto belonging.   In witness whereof, I have hereunto set my hand and seal this 26th day of February, in the year one thousand eight hundred and fifty.

"KALAMAU,   [L. S.]

" Sealed and delivered in presence of

"JOHN R. JASPER."

Testimony was adduced to show that the signature of John R. Jasper, the subscribing witness, who is dead, was genuine, and Mr. Dowsett also swore that he knew all the parties, Keo, Kalamau, and Capt. Meek, and was acquainted with his transactions, that he knew the signature and handwriting of Kalamau, and that her signature to this deed was genuine.

It was urged against this deed that it was in the English language, and Kalamau being a Hawaiian the inference was drawn that she did not understand its contents, there being no certificate on the deed that it was translated to her.

We hold that a grantor is presumed to have known the contents of the deed he has executed unless the contrary be affirmatively shown.   2 Washburn, R. P. 576, Kimball *vs.* Eaton, 8 N. H. 391.

The burden of proof of want of knowledge of the contents of the deed was on the plaintiffs, and they adduced no testimony on this point.   This Court must continue to hold parties to be *prima facie* responsible for their deeds.   See Kaopua et al. *vs.* Keelikolani, July term, 1875.

It is further urged that the fact that the deed is not acknowledged or recorded, rebuts the presumption that it was executed and delivered.

But it is clear that this deed was delivered.   The fact that it came from the grantee's possession presumes delivery.

"If a deed is found in the grantee's hands, a delivery and acceptance is always presumed."

2 Washburn, R. P., 581, and many cases there cited. Moreover, the witness Jasper attests that it was "sealed and delivered."

"Where a deed appears to have been duly signed and sealed and is attested, the delivery will be inferred to have taken place."

Burling *vs.* Paterson, 9 Carr and P., 570. Where the attestation clause was the same as in this case "sealed and delivered," Lord Eldon said "there would be a miscarriage in a judge directing a jury not to presume that the deed was signed in the presence of the same witnesses as it professed to be."

McQueen *vs.* Farquhar, 11 Vesey, 478.

But it is said that the statute of registration in force at the date of this deed, forbidding a deed not acknowledged or recorded being offered in evidence, has the effect of rebutting the presumption that the deed was signed and delivered. The statute reads:

S. 7 Statute, 1846. "All deeds of landed property and leases for a longer period than one year, however executed, all releases of dower, and all mortgages or other pledge of real estate in security for the payment of money, all deeds and declarations of trust of real property and all evidences of interest in the same shall be recorded with the registrar of conveyances within thirty days after the execution thereof, in default of which no such document shall be valid against another document conveying the same right or interest subsequently executed, but previously acknowledged and recorded."

Section 9. "No court of justice shall take judicial cognizance of any instrument required by law to be recorded, which shall not be certified so to have been by the registrar of conveyances."

A new Act on the subject of registration, substantially the same as in the Civil Code, was passed by the Legislature,

27th July, 1852, repealing the law above quoted. So, whatever effect this law might have had in 1850, at the time this deed is dated, in preventing such a document from being put in evidence, it had no effect at the time of the suit, for the law was repealed.

But we do not understand that the non-record of a deed, has by the Act of 1846, any further effect than to prevent courts of justice from taking judicial cognizance of it. In other words it does not make the deed a nullity, though it would seem that the jury so regarded it. The Legislature deemed it advisable that deeds of landed property should be recorded, and the law requiring this to be done enacted that in default of this record no such unrecorded document should be valid against another document conveying the same right or interest subsequently executed, but previously acknowledged and recorded, and as a further penalty no court of justice was to take judicial cognizance of such an instrument.

In 2d Washburn, pp. 590-1, we find it laid down that "the purposes of this record are chiefly to give notice to all persons having occasion to ascertain whether there has been any prior conveyance or incumbrance of any real estate; and when it is made it becomes constructively a notice and as effectual in law as if personally given to the party to be affected by it. It may therefore be stated in general and nearly unqualified terms, that between the parties to the deed, or the heirs or devisees of the grantor and the grantee, and those claiming under him, the validity of the deed is not affected by the want of record."

No direct evidence was offered by the plaintiff to impeach this deed, and we are unable to see how any of the circumstances above referred to can have any weight in law in invalidating it.

We fully recognize the principle so frequently reiterated in this Court, that a verdict will not be set aside merely when the Court would have arrived at a differrent conclusion

from the jury; but in this case the deed does not seem to us to be impeached by the circumstances above referred to.

But it is said that as there was evidence of an adverse occupancy by Oopa for 20 years and over previous to March, 1873, the jury might have based their verdict upon this in favor of the plaintiff's title, even though that they found that the deed was well proven, and as the verdict is a general one for the plaintiff, we cannot tell upon which ground they found for the plaintiff.

We again quote from 2 Washburne, p. 490, as expressing our view as to what instructions should be given to the jury in the matter of title by prescription.

" The question whether the possession is hostile or adverse is one partly of law and partly of fact.

" Whether the possession in fact is adverse, or is under the owner's title is one for the jury, with this limitation that the burden of showing the possession to have been adverse is upon the party alleging it. But what constitutes an adverse possession, and what evidence of its being such is sufficient, are questions of law for the Court. As the possession derives its character from the intent with which it was taken and is held, it is competent to show by the declarations of the occupant made during the occupancy that he did not hold adversely. Where, therefore, one enters in subserviency to the title of the real owner, there must be a clear, positive and continued disclaimer and disavowal of the title under which he entered, and an assertion of an adverse right brought home to the owner, in order to lay a foundation for the operation of the statute of limitations."

The mere possession, then, of Oopa, however long continued, would give him no title, unless accompanied with a claim of right, and a distinct disavowal of Meek's title to the land.

The burden, then, was on Oopa to prove that his possession was adverse, and evidence that Captain Meek had the land assessed to him and that he paid the taxes on it, that he

exercised acts of ownership over it by putting up fences and selling portions of it, by dealing with the government with respect to taking a portion of it for widening the road, should have been allowed to go to the jury as evidence tending to show that Oopa's possession was subordinate to Meek's and was not adverse.    To the same effect would also be evidence of surveys of this land made at John Meek's instance, and of royal patents of adjoining lands describing the land in question as Meek's land.    This would not of course show that it "was Meek's land," but it would tend to show that Oopa's possession was not so notoriously adverse to Meek's as to raise the presumption that he was aware of Oopa's claim.

As regards possession of the original awards and surveys or what are often called "muniments of title," we do not attach much weight to them, as the law makes certified copies equally valuable as evidence; but such testimony is not irrelevant, and unless explained was entitled to go to the jury as strengthening the evidence of the delivery of the deed under the award.

It seems to have been lost sight of on the trial that the possession of Oopa if found to be adverse could only inure to the benefit of the plaintiff Kaaihue.    The other plaintiffs must stand or fall by the failure or otherwise of the deed of Kalamau to Meek, for it is not claimed that they ever had the actual possession of the land.

One point remains to be settled, the effect of the judgment of the Police Court of 1873.    It is claimed for this judgment that as the Police Court has jurisdiction under Article 51 of the Civil Code to try actions for the possession of land between landlord and tenant, the fact of the tenancy of Oopa under Meek as found by this Court imparts verity and cannot be contradicted; that is, the question of tenancy as between the parties and their privies was finally settled by the Police Court.

A careful examination of the statute leads us to the conclu-

sion that the Police Court could only have jurisdiction in cases where the relation of landlord and tenant confessedly existed, the main question for the Court being the facts of forfeiture for non-payment of rent or breach of covenants, or expiry, if by parole after due notice to quit.

As the fact whether there was any tenancy at all was disputed in that Court, the judgment and its execution by writ of possession goes no further than to interrupt the statute of limitations.

It is to be regretted that this litigation has been so protracted, and the Court is well aware of the difficulties that have stood in the way of a speedy settlement of this case owing to the death of some of the parties, changes in the organization of the Court, and of the counsel engaged. But, feeling as we do, that full justice has not yet been done, we have come to the conclusion that the verdict should be set aside and a new trial granted, and we have thought it necessary to touch upon some of the questions of law which are involved, although the bill of exceptions raising them does not show that the points were duly excepted to at the trial.

———

Dissenting opinion of Mr. Justice Harris:

I am reluctantly compelled to dissent from the foregoing opinion.

Regarding the evidence which, in the opinion of the majority of the Court, as indicated above, should have been allowed to go to the jury, it seems to me sufficient to say that the law is express and particular upon that subject, vide 836th Section of the Civil Code: "If any party shall think himself aggrieved by any such opinion, direction, or order, and the Justice shall not think fit to reserve the case upon his motion, the party may allege exceptions to such opinion, direction, or order, and the same being reduced to writing in a summary mode, and presented to the Justice before the final adjourn-

ment of the Court for the term, and being found conformable to truth, shall be allowed and signed by the Justice; and if said Justice shall refuse to allow and sign said exceptions, the truth of the allegations therein contained, may, nevertheless, be established before the full Court, and the exceptions allowed by them."

It is not sufficient therefore that some passing exceptions should have been noted to the ruling of the Judge at the trial, which is only a compliance with the seventh rule of the Court. But they likewise, according to the statute above quoted, must be presented to the Judge before the final adjournment of the Court for the term and be signed by him.

No such exceptions were presented to me or signed by me.

On the 26th of January 1876 I signed a paper purporting to be a bill of exceptions, being entirely misled. This paper I afterward recalled, when I had read it over carefully, and found it inconsistent with the law, having first called both counsel, and pointed out to them the manner in which I had been misled and the impropriety of the paper. How that paper appears again on the record, I am at a loss to understand; it should be taken off the file. I then gave the counsel for defendants the opportunity to file exceptions, if he could, as of the last day of the term, and he did file the following:

" In the Supreme Court of the Hawaiian Islands, of the January term, 1876.

" Kaaihue et al. *vs.* Elizabeth Crabbe et al. Action of ejectment.

" Be it remembered that during the trial of the above cause, the defendants' attorney offered in evidence a copy of the judgment of the Police Court, Honolulu, and the writ of possession therein dated — day of ——— 1873, in the case of John Meek *vs.* Oopa, in a possessory action in said Police Court, in order to show an act of possession and a tenancy of Oopa under John Meek, when the Court replied that it was

98

no evidence of a tenancy, but only evidence of the Police Magistrate's opinion to that effect, but it was evidence that the alleged prescription was broken that day and could be admitted for that purpose, to which ruling of the Court, the defendant's attorney excepted, by observing that he would save the point on said ruling.

"That after evidence had been closed, the defendants' attorney, among others, asked the following instruction : 'That the fact of a legal ouster of Oopa by a writ of possession based on a judgment of the Police Court in favor of John Meek *vs.* Oopa, tends to show a tenancy of Oopa under John Meek.' Which instruction was refused by the Court, to which opinion of the Court in refusing said instruction, the defendants' attorney excepted, by using the words that he saved the point on all instructions asked by him and refused by the Court.

"(Signed)        W. C. JONES,

Attorney for defendants."

This I refused to sign on the ground that they had alleged nothing in accordance with the seventh rule of Court, and in fact they had made no such exception; at the time I then reduced to writing my remembrance of the case from my notes and memory and gave defendants' counsel the opportunity to show by affidavits that my memory or statement was inaccurate. This he declined to do, and therefore by the very force of the statute there were no exceptions before the Appellate Court, and I cannot but regard it as exceedingly dangerous for the Court to take up points which are not raised by counsel in the regular way, and express an opinion upon them. It is likewise a mistake to suppose that it was lost sight of all the trial, whether or not the possession of Oopa would inure only to the benefit of Kaaihue or of Kaaihue and all the other plaintiffs. But on the contrary, in point of fact, it was suggested by the counsel for the defendants and abandoned by him because it was conceived that if Oopa had held

at all he had held for himself and his co-heirs and that if the prescription should be found to have run in favor of Oopa, it could make no difference to defendant whether he held the land for himself alone or for himself and others. His petition filed the 17th of March, 1873, sets forth and declares that he claimed it for himself and his co-heirs. It will be observed then that the points alleged in the bill of exceptions which were refused on the 10th of April, 1876, regarded only the effect of the possessory suit in the Police Court and judgment thereon, and that the majority of the Court concurred with me in the opinion then expressed, that said suit had no effect other than to interrupt the Statute of Limitations.

Therefore, as it seems to me, the only point which remained for the Court to decide on the motion for new trial is whether the verdict of the jury is contrary to the law and evidence.

The grounds upon which the plaintiffs claimed this property were that they were the direct heirs of Kalamau to whom the Land Commission made the original award, which award is dated April 1st, 1850, that Oopa had been put in possession of it by Kalamau herself previous to her departure for Hawaii, whither she had gone being sick, as Mr. Dowsett says, about 1850, and that he continued to hold it from that time for Kalamau during her life time, and after her death for Kalamu's heirs, of which he was one, up to the 14th of March, 1873, at which time he was ousted by a process from the Police and District Court of Honolulu. Plaintiff was claiming that Oopa did not " enter in subserviency to the title of the real owner "—calling Meek the real owner—but under Kalamau, and therefore he had no occasion to bring home his adverse right to Meek as the owner. But he was in possession under Kalamau's title, and that hers was the only recorded title. His whole plea was that he never knew or recognized Meek as having any title, and if that was the fact, he could not give Meek any notice of the nature of his

holding any more than any person claiming to hold in fee simple, gives notice to any particular person of his so holding. His whole claim was that he never had entered in subserviency to Meek.

On the part of the defendants it was claimed that he had a deed from Kalamau dated 26th of February, 1850, in favor of Capt. Meek, and that Oopa had been placed in possession there by Capt. John Meek.

Evidence was introduced on both sides, on the side of the plaintiff to show that he was put in possession by Kalamau and that he had continued to hold possession as he alleged; on the part of the defendants it was sought to show that Capt. Meek put Oopa in possession and that he continued to occupy by the permission of Capt. Meek.

The object of the plaintiff was to impugn the deed. This he endeavored to do by showing that it was written in the English language, which the grantee confessedly did not understand; that it was never acknowledged, although the law, as it stood at that time and for many years afterward, prohibited a deed so unacknowledged even from being considered by a Court of Justice, and that Kalamau, during her life time continued in possession for herself and after her death which occurred sometime in the year 1853. Oopa had continued in possession as her heir for himself and other heirs, for a period of twenty-three years subsequent to the execution of the deed. It was likewise adverted to that the witness Jasper did not state in his attesting clause that it was translated to her or even signed in his presence, and in as much as the acknowledgment was necessary in order that it might be used in evidence in a Court of Justice, that all these facts were evidence to the jury that the woman would not acknowledge it in her life time, and that Meek must have had good reasons for not endeavoring to obtain possession under the deed, during this long period of time.

Thus evidence upon the occupation was adduced upon the

one side and upon the other, and it was argued that if they believed the testimony which the defendants offered and that Oopa during that long period of time had held for Meek, his possession was Meek's possession and would support the deed so as to make it quite irrefragable.

And the defendants even asked the Court to instruct " that an unacknowledged and unrecorded deed was good against the grantor and his heirs and if they believe from the evidence that Kalamau executed the deed produced before the Court to John Meek, and that he held possession under said deed, they will find a verdict for defendants.'' This instruction was given *ipsissimis verbis.*

This was the issue that the defendants put to the jury plainly and distinctly of their own motion; the effect of the verdict was, therefore, either that the jury either did not believe that Kalamau had ever executed the deed, or that they did not believe that Meek ever held possession under that deed during those twenty years.

Now, the undoubted rule is, that the verdict will not be set aside where there has been evivence on both sides and no rule of law violated nor manifest injustice done, so in this case, there was evidence on both sides and the jury were the proper judges which scale preponderates. Graham and Waterman on New Trials, p. 380.

The defendants asked that the jury be instructed "that if they believed that Meek placed Oopa there, then Oopa's possession was Meek's possession, and still again, that if they believed that Kalamau conveyed the land in question to Meek, neither she nor those claiming under her could dispute the title thus conveyed.'' It was charged in the words that the defendants asked. There had been a previous trial which was presided over by Mr. Justice Judd, in which the jury were divided seven to five; and in this, the jury was unanimous for the plaintiff, therefore they did not find that Meek, put Oopa in possession or else did not find that Kalamau conveyed the land.

The previous litigation had been prolonged and exhaustive.

No new trial has ever been granted in this Court, under such circumstances, and the words of Chief Justice Parker in the case of Baker *vs.* Brigg, 8 Pick. 126, appear to me most applicable. "It is moved to set aside this verdict, on the ground that it is against evidence, notwithstanding there was a great deal of evidence on both sides so contradictory that on a former trial the jury could not agree, and on this trial it was the subject of elaborate argument, and scrupulous comparison of testimony. If under these circumstances a verdict can be set aside as against evidence, no action can be tried which may not be brought in review before the Court upon the facts, and the trial by jury will be virtually superseded. Perhaps no cause which really has two sides to it, can be determined without a serious belief in his counsel, that the verdict was wrong and against the weight of the evidence. But disputes must be settled and finished, and our law and constitution having given the ultimate decision upon the facts to the jury, to set aside their verdict, unless in extraordinary cases where it is manifest that they have mistaken or abused their trust, will be to usurp a power which has been carefully and properly withheld from ns."

For these reasons I think that a new trial should be refused.

A. S. Hartwell, for plaintiffs.

W. C. Jones and E. Preston, for defendants.

Honolulu, January 30th, 1877.